UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : Case No. 24-cr-00503 (RBW) |
| | : |
| JASON JEROME BELL, | : |
| | : |
| Defendant. | : |

GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION
FOR DEFENDANT JASON BELL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its anticipated oral motion that defendant Jason Bell be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving possession of a firearm). The Government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pretrial detention.

I. Introduction and Procedural History

Defendant Jason Bell was indicted on November 7, 2024 by a federal Grand Jury for Unlawful Possession of a Machinegun, in violation of 18 U.S.C. § 922(o), and Carrying a Pistol Without a License (CPWL) (Outside Home or Business), in violation of 22 D.C. Code § 4504(a)(1), for his brandishing of a loaded .45 caliber Glock pistol with a functioning Glock switch machinegun conversion device.

Mr. Bell was originally arrested by the U.S. Park Police on October 11, 2024, and charged by Complaint in D.C. Superior Court (Case No. 2024 CF2 010265) with one count of CPWL (Outside Home or Business). Mr. Bell was previously ordered detained pending trial by the Honorable Heide Herrmann of the D.C. Superior Court on October 15, 2024.

1

Following Mr. Bell's federal indictment, an Initial Appearance is scheduled to be held on November 13, 2024, before the Honorable Zia M. Faruqui. The Government intends to move for Mr. Bell's pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(E) at his Initial Appearance.

## II. Legal Authority and Argument

Pursuant to 18 U.S.C. § 3142(f)(1)(E), the government may seek pretrial detention in a case concerning a felony that involves the possession or use of a firearm. The government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). The Government must establish by only a preponderance of the evidence that a defendant poses a risk of flight. *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986). The government may present evidence by way of a proffer at a detention hearing. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

The Bail Reform Act requires pretrial detention where a court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In making that determination, a court must consider "(1) the nature and circumstances of the offense charged . . . (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* § 3142(g).

In light of the facts and circumstances of this case, and the authorities presented herein and at the detention hearing, the Government respectfully submits that there is no condition or combination of conditions that could assure the safety of the community and Mr. Bell's appearance at future proceedings. Mr. Bell should be detained under 18 U.S.C. § 3142(e)(1).

### A. Nature and Circumstances of the Offense

The facts of this offense indicate the degree of Mr. Bell's disregard for the law and show

the extent to which he poses a danger to the community should he be released. Mr. Bell was caught on camera by U.S. Park Police (USPP) pulling a gun—loaded with an extended magazine and a Glock "switch" machinegun conversion device ("MCD")—in broad daylight, and aiming at a car that happened to be pulling a U-Turn in front of him on a busy city street. The direction that Mr. Bell aimed his loaded machinegun was into Marion Barry Avenue SE, a busy commercial and residential corridor surrounded by sidewalks, pedestrians, other cars, businesses, residences, and an elementary school only several hundred feet away.

Around 2:45 pm on October 11, 2024, a USPP Investigator had been conducting surveillance of Mr. Bell in the area he was known to frequent, based on public intelligence gathering that showed Mr. Bell and others to be flashing firearms. Mr. Bell was located in the alley behind 1927 16th Street SE, a house he did not own or reside at, but which he frequently hung out behind with others known to possess and show firearms. Mr. Bell was walking back and forth between the backyard, the alley, and the northern sidewalk of Marion Barry Ave. SE.



*Google StreetView image of the alley and driveway behind 1927 16th Street SE, Washington, DC 20020, with Marion Barry Ave. SE in the foreground*

The USPP Investigator was positioned on the south side of Marion Barry Ave. SE,

approximately a block to the west of Mr. Bell, with a clear and unobstructed view of Mr. Bell. Through his iPhone and a set of binoculars, the USPP Investigator saw Mr. Bell pull a firearm from the waistband of his pants and aim it at/across Marion Barry Ave. SE, then lower the firearm again. At the same moment, the USPP Investigator observed a silver sedan driving westbound on Marion Barry Ave. SE in front of Mr. Bell, then saw the sedan pull a U-Turn and go back eastbound on Marion Barry Ave. SE. It appeared that Mr. Bell may have been aiming at the car. The USPP Investigator captured Mr. Bell's actions on his iPhone with a "Live Photo," which is a photograph that also captures the moments before and after the photo is taken; it appears like a short video.[1] Two screenshots from that Live Photo/video are below, and the Government is prepared to show the Live Photo/video to the Court at the Detention Hearing.

 

*Screenshots of Live Photo taken by USPP. At left, Mr. Bell is pulling the firearm from his waistband as the silver sedan drives by; at right, Mr. Bell is aiming the firearm*

---

[1] https://support.apple.com/guide/iphone/take-live-photos-iph17471d6de/18.0/ios/18.0.

4

Mr. Bell was aiming southwest from his location across Marion Barry Ave. SE, which turned out to be in the general direction of the USPP Investigator (yellow arrow below showing Mr. Bell's direction of aiming, according to USPP). Also in that direction is Ketcham Elementary School, approximately 300 feet away. Thankfully, students were not present that day but staff were, for a Professional Development day.



The USPP Investigator kept Mr. Bell under surveillance for the approximately 8 minutes it took for backup to arrive, during which time Mr. Bell went back to walking between the alley, sidewalk, and backyard. When backup arrived, USPP personnel arrested Mr. Bell without incident. A firearm was recovered from Mr. Bell's front waistband and secured at the scene. USPP determined from the homeowner of the residence that Mr. Bell did not live at that location, and determined from MPD that Mr. Bell does not have a permit to carry a firearm in DC, nor is the firearm registered to him. USPP also recovered a small amount of marijuana and empty plastic bags from Mr. Bell.





*USPP body-worn camera stills from firearm recovery during Mr. Bell's arrest*

The firearm recovered from Mr. Bell's waistband was a black Glock 30 gen 4 pistol, .45

caliber, with serial number UFV956, and a black Glock "switch" MCD installed on the back. The firearm had a 26-capacity magazine inserted and was loaded and ready to fire, with 26 rounds in the magazine and 1 round in the chamber.



*Recovered firearm with Glock "switch" MCD and accessories*

ATF examined and tested the firearm with the Glock "switch" MCD installed, which functioned and fired more than one shot with a single trigger pull. ATF made a preliminarily determination that the firearm installed with the switch is indeed a machinegun under 26 U.S.C. § 5845(b), and that the Glock "switch," in and of itself, is a machinegun under the statute.

Mr. Bell's public Instagram posts make clear that he understood what "switches" were, and that he did not hesitate to threaten their use against his "Opps" (or opponents). As recently as October 5, 2024—just six days prior to this incident—Mr. Bell's Instagram account posted a reference to shooting his "Opps" with a "switch," as depicted below:

7



*Public Instagram post from October 5 by @Glock1Tapp account determined to be used by Mr. Bell. Mr. Bell is at left of the above picture, in the same air cast he was wearing at his arrest.*

Finally, Mr. Bell tested positive for fentanyl when he was drug tested upon lockup. *See United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020) (Kollar-Kotelly, J.) ("the possession of a firearm, especially while seemingly on a drug such as PCP, presents a serious danger to the community").

    **B.**    **Weight of the Evidence**

The weight of the evidence against Mr. Bell in this case also strongly supports pretrial detention. As clarified by former-Chief Judge Howell, this factor is a "common-sense" consideration that, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *United States v.*

8

*Blackson*, No. 23-cr-25 (BAH), 2023 WL 1778194, at *10 (D.D.C. Feb. 6, 2023) (Howell, C.J.), *aff'd*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023).

Mr. Bell was already indicted by a federal grand jury for these offenses. The Government has strong evidence that Mr. Bell possessed a loaded machinegun on October 11, 2024, and in so doing also carried a pistol outside his home or business. Mr. Bell's commission of the offenses was in fact caught on camera, as he drew and aimed his machinegun at passing traffic on a busy street in the middle of the afternoon. The firearm that was recovered from his waistband had a machinegun conversion Glock switch attached to the back, clearly visible to the holder and, regardless, Mr. Bell has demonstrated that he knows what switches are. ATF has confirmed that the switch functioned as designed—it turned a normal semi-automatic pistol into a machinegun under 26 U.S.C. § 5845(b).

    C.    **Defendant's History and Characteristics**

Mr. Bell's multiple prior convictions, including for offenses involving a firearm, just in the three years since he turned 21, and his recent criminal conduct also involving firearms, strongly demonstrate the danger his release would pose to the community as well as his repeated disregard for the rule of law.

For this factor, this Court considers, among other factors, "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history." *United States v. Taylor*, 289 F. Supp. 3d 55, 69 (D.D.C. 2018) (Moss, J.). This Court in considering pretrial detention "may also consider prior arrests or charges brought against a defendant, even when those actions did not result in convictions." *See id.* at 70.

Mr. Bell was convicted in 2022 after MPD observed him on social media with firearms— just like in the instant case—and upon executing a search warrant at his house, found Mr. Bell in

his bedroom with a loaded, stolen 9mm handgun, 31 additional rounds of ammunition, and an extra magazine. Case No. 2021-CDC-006938 (D.C. Super. Ct.). They also found small amounts of drugs (individually packaged into smaller bags) and a scale. Mr. Bell was sentenced under the YRA to a year of probation for Attempted Possession of an Unregistered Firearm and Unlawful Possession of Ammunition; the case was set aside in 2023.

Mr. Bell has two other convictions, each in Virginia, in 2023 related to car thefts. Mr. Bell pleaded guilty to Unauthorized Use of a Vehicle (misdemeanor) and was sentenced to 30 days imprisonment in each case, all suspended, in Fairfax, VA (April 17, 2023, Case No. GC22064808-00); and Arlington, VA (March 15, 2023, Case No. GC22001942-00).[2]

It is relevant to the Court's inquiry that Mr. Bell remains under investigation for possession of two more firearms, including one machinegun, that were found when he and another individual were arrested on August 27, 2024, in the exact same backyard area (1927 16th Street SE) and alley where he brandished his machinegun less than two months later in October. MPD approached Mr. Bell and the other individual after noticing the presence of a THC wax container and an unmarked pharmaceutical bottle (later determined to have a partially removed label reading "prometh"), and further observing that Mr. Bell alerted the other individual to the presence of law enforcement, causing the other individual to place something in a backpack near them both. After approaching Mr. Bell and the other individual, MPD saw a firearm at the top of the backpack and ultimately found a second firearm in the backpack as well. The firearm at the top of the bag had a Glock switch installed, just like the firearm seized from Mr. Bell's waistband in October.

That was not the only time Mr. Bell was arrested because of firearms, even beyond the conviction above and the current offense. Mr. Bell was arrested on July 6, 2024, with five other

---

[2] The original charges in the Fairfax case were conspiracy to commit grand larceny (stealing a car), and in the Arlington case, felony Unauthorized Use of a Vehicle.

people, approximately three blocks from the same 1927 16th Street SE location. After MPD drove near the individuals, several attempted to flee in a stolen car before crashing into an MPD cruiser, and firearms were found both in the car and in a bag on the ground close to Mr. Bell and another individual, including a "ghost" gun with a switch on it in the bag.

Further, the Government is aware that Mr. Bell previously requested in Superior Court that his bond status be reexamined to permit his release to his mother's custody at his normal residence. To the extent Mr. Bell makes that argument again, it is highly relevant to the Court's consideration that two separate search warrants have been executed by MPD at Mr. Bell's residence over the last three years. Each of those search warrants found firearms in Mr. Bell's residence. In 2021, in the search warrant that led to Mr. Bell's prior DC conviction, MPD found a stolen firearm in Mr. Bell's own bedroom. In January of this year, MPD found a firearm with an extended magazine in the living room, and a 40-round extended magazine, 9mm ammunition, and 28 money orders in Mr. Bell's bedroom. Releasing Mr. Bell to his current residence or, respectfully, to the custody of his mother who resided at that residence during both of the prior search warrants, is in no way a condition or part of a combination of conditions that will reasonably assure the safety of the community or provide any assurance that Mr. Bell will not continue illegally acquiring and possessing, and brandishing, firearms and machineguns.[3]

### D. Danger to the Community

The nature and seriousness of the danger to any person or the community posed by Mr. Bell's release also strongly supports pretrial detention in this case. Mr. Bell's serious and dangerous criminal conduct demonstrates that his conditional release would pose a danger to the community and risk of noncompliance.

---

[3] MPD records further show numerous calls to Mr. Bell's residence related to his alleged violence and domestic disturbances against his relatives, but he was not arrested for those offenses.

On October 11, 2024, Mr. Bell chose to aim a loaded machinegun at traffic on a busy road in the middle of the day, surrounded by residences and aiming in the general direction of an elementary school. He has repeatedly chosen to be around loaded firearms and machineguns, regardless of the danger presented to the community by those instruments of violence. *See United States v. Howard*, 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) (Howell, C.J.) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community.").

Mr. Bell's offenses place the community, which is facing staggering levels of gun violence, in danger. Washington D.C. suffered over 200 homicides in 2023; there have been over 170 homicides so far in 2024. *See* MPD, *District Crime Data at a Glance*.[4] Glock switches and other illegal MCDs are capable of inflicting grave damage and destruction even beyond normal firearms, and are being recovered by local, state, and federal law enforcement from crime scenes at alarming rates. ATF alone recovered over 31,000 machinegun conversion devices from 2018 to 2023.[5] These devices, which can allow weapons to fire at a rate of up to 1,200 bullets per minute, make shootings more deadly, render law enforcement officers' jobs substantially more dangerous, and increase the risk that innocent bystanders could be injured or killed when such a volume of bullets is unleashed.[6]

There is ample evidence that this is the second machinegun that Mr. Bell has been found holding, or near, just in the last three months, and the third firearm. His pattern of conduct involves many more firearms since he became an adult. Mr. Bell's blatant disregard for the law to continue to possess firearms and machineguns not only demonstrates his contempt towards the

---

[4] https://mpdc.dc.gov/node/197622.
[5] https://www.atf.gov/news/press-releases/us-attorney-and-atf-release-new-public-service-announcement-warning-against-possession.
[6] https://fletcher.house.gov/uploadedfiles/2022-04-11_letter_to_atf_on_auto_sears_final_copy.pdf.

law but also perpetuates the gun violence plaguing his community. *See United States v. Gassaway*, No. 21-cv-550, 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (Lamberth, J.) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public").

Mr. Bell's brandishing of this machinegun was all the more dangerous because, as testing showed upon Mr. Bell's subsequent lockup at D.C. Jail, Mr. Bell tested positive for fentanyl. The evidence here strongly indicates that while under the influence of an incredibly dangerous controlled substance, he knowingly aimed a loaded machinegun in broad daylight at traffic in the direction of an elementary school just several hundred feet away.

## CONCLUSION

In consideration of Mr. Bell's conduct and history, there is no condition or combination of conditions that the Court could fashion to reasonably assure the safety of the community and his appearance at future proceedings. The Government respectfully requests that the Court grant its motion to detain defendant Jason Bell without bond pending trial.

Respectfully Submitted,
MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By: */s/ Lauren Randell*
LAUREN RANDELL
Special Assistant United States Attorney
D.C. Bar Number 503129
United States Attorney's Office
601 D Street NW
Washington, D.C. 20530
Telephone: (202) 730-6843
Email: lauren.randell2@usdoj.gov

                    THOMAS G. STRONG
                    Assistant United States Attorney
                    United States Attorney's Office
                    601 D Street NW
                    Washington, DC 20530
                    Telephone: 202-252-7063
                    Email: thomas.strong@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the foregoing to be served upon counsel of record via the Electronic Case Filing (ECF) system on November 13, 2024.

                By:    */s/ Lauren Randell*
                        LAUREN RANDELL
                        Special Assistant United States Attorney